IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANNISNICOLE WILLIAMS | * | |
| Plaintiff | * | |
| vs. | * | CIVIL ACTION NO. MJG-13-2947 |
| HOME PROPERTIES, L.P. et al. | * | |
| Defendants | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM AND ORDER RE: PARTIAL SUMMARY JUDGMENT

The Court has before it Defendant's Motion for Partial Summary Judgment [Document 55] and the materials submitted relating thereto. The Court finds a hearing unnecessary.

I.   BACKGROUND

As discussed herein, Plaintiff Annisnicole Williams ("Williams") rented an apartment (the "Unit") in the Hunters Glen Apartments ("Hunters Glen"), a subsidiary of Defendant Home Properties, L.P. ("Home Properties").[1] Shortly after taking occupancy, Williams was bitten by bed bugs in the Unit. She vacated the premises and filed the instant lawsuit.

Williams filed the case in the Circuit Court for Frederick County, Maryland naming as Defendants: Home Properties, a New

---

[1]   Home Properties raises no issue regarding its being held liable for the actions or inactions of its subsidiary Hunters Glen.

York entity; and Melissa LaChance (referred to herein as "LaChance/Ellison" by virtue of her marriage and change of last name to Ellison), a Maryland citizen.[2]  LaChance/Ellison was the Hunters Glen Property Manager.

Home Properties removed the case to this Court, alleging fraudulent joinder of LaChance/Ellison.  Williams filed a Motion to Remand, [Document 6], denying fraudulent joinder of LaChance/Ellison, but raising no issue as to the citizenship of Home Properties.  In the Memorandum and Order Re: Remand and Dismissal, [Document 21], the Court found that LaChance/Ellison had been joined fraudulently and denied remand.

In the Complaint, Williams asserted claims in four Counts, of which three remain pending[3]:

        Count I        Negligence

        Count II       Maryland Consumer Protection Act

        Count III      Fraudulent Concealment

By the instant motion, Home Properties seeks summary judgment on the claims in Count III (Fraudulent Concealment) and on the claims for punitive damages.

---

[2]    LaChance/Ellison Dep. 6:8-17, 8:18-9:6.
[3]    In the Memorandum and Order Re: Remand and Dismissal, [Document 21], the Court dismissed all claims against LaChance/Ellison and dismissed a battery claim against Home Properties in Count IV.

2

## II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted if the pleadings and supporting documents "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The well-established principles pertinent to summary judgment motions can be distilled to a simple statement: The Court may look at the evidence presented in regard to a motion for summary judgment through the non-movant's rose-colored glasses, but must view it realistically. After so doing, the essential question is whether a reasonable fact finder could return a verdict for the non-movant or whether the movant would, at trial, be entitled to judgment as a matter of law. See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991).

Thus, in order "[t]o defeat a motion for summary judgment, the party opposing the motion must present evidence of specific facts from which the finder of fact could reasonably find for him or her." Mackey v. Shalala, 43 F. Supp. 2d 559, 564 (D. Md. 1999) (emphasis added). However, "self-serving, conclusory, and uncorroborated statements are insufficient to create a genuine issue of material fact." Int'l Waste Indus. Corp. v. Cape

3

Envtl. Mgmt., Inc., 988 F. Supp. 2d 542, 558 n.11 (D. Md. 2013); see also Wadley v. Park at Landmark, LP, 264 F. App'x 279, 281 (4th Cir. 2008).

When evaluating a motion for summary judgment, the Court must bear in mind that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

III. DISCUSSION

The instant decision relates solely to Williams' Count III fraudulent concealment claim. The decision does not relate to her Count I (negligence) or Count II (Maryland Consumer Protection Act) claims.

   A.   The Tort of Fraudulent Concealment

Williams presents a fraudulent concealment claim based on the contention that Home Properties "had a duty to disclose the information . . . regarding the infested condition of the [Unit] and the bed bug-related history of the [Unit]." Compl. ¶ 56. She does not present a claim for failure to disclose.

4

Fraudulent concealment and failure to disclose are closely related, yet distinct, torts. Judge Hollander of this Court has explained:

> Ordinarily, under Maryland law, a mere failure to disclose a material fact does not constitute fraud, in the absence of a legal duty to disclose that inheres in certain types of transactions; "Maryland recognizes no general duty upon a party to a transaction to disclose facts to the other party." However, "[e]ven in the absence of a duty of disclosure, one who suppresses or conceals facts which materially qualify representations made to another may be guilty of fraud."

Ademiluyi v. PennyMac Mortgage Inv. Trust Holdings I, LLC, 929 F. Supp. 2d 502, 531 (D. Md. 2013) (alteration in original) (citations omitted).

"Fraudulent Concealment 'is any statement or other conduct which prevents another from acquiring knowledge of a fact, such as diverting the attention of a prospective buyer from a defect which otherwise, he would have observed.'" Lloyd v. Gen. Motors Corp., 916 A.2d 257, 274 (Md. 2007). It "includes the <u>situation where the defendant actively undertakes conduct or utters statements designed to, or that would, divert attention away from the defect</u>," whereas "[a] claim of failure to disclose . . . requires only that the defendant remain silent about, or omit, facts that the defendant had a duty to disclose." Id. at 274 n.11 (emphasis added).

5

B.  Pertinent Chronology

(before) July 16, 2012    Hunters Glen was aware that the Unit was infected with bedbugs.

July 16, 2012    Hunters Glen signed a Bed Bug Limited Service Agreement with J.C. Ehrlich Co., Inc. ("JCE"), a pest control company, for "the periodic treatment of existing bed bug infestations" in the Unit, specifically to "treat all areas – 3 visits."

July 17, 2012    LaChance/Ellison provided the prior tenant of the Unit with a Notice to Vacate effective August 31, 2012 due to breaches of the lease.

Aug. 8, 2012    1st attempt to treat the Unit – JCE did not treat the Unit because the prior tenant did not have the Unit adequately prepared.

Aug. 15, 2012    1st treatment - 11 to 25 bedbugs - "Inspected and treated throughout interior baseboards, sofa, mattress," but "dressers not emptied, curtains still hanging, items on floor[, and] Second bedroom not prepared."

Aug. 22, 2012    2nd treatment – 11 to 25 bedbugs in "stuffed furniture and bedroom" - "treatment to accessible areas only" because "closets full, drawers not emptied, curtains hanging, master bedroom not prepared."

Sept. 1, 2012    Prior tenant vacated the Unit.

Sept. 4, 2012    3rd treatment – 2 bedbugs in "wall seam second bedroom" – treatment to multiples areas, including, inter alia, wall voids, baseboard areas, wall seams, and door trim.

Sept. 4, 2012    Email from Hunters Glen service manager Eric Maczis ("Maczis") to LaChance/Ellison stating that the Unit "is infested with roaches and bbs [bedbugs and] needs a partial tag [renovation]."

6

Sept. 5, 2012      Email from LaChance/Ellison acknowledging that the Unit had roaches and bedbugs and needs treatment.

Sept. 14, 2012     Apartment Inspection Report of the Unit by Home Properties indicated "BBs [bedbugs], roaches."

Oct. 15, 2012      Email from Maczis to LaChance/Ellison stating that he "found a dozen bbs [bedbugs] coming out of [the] wall" in the Unit.

Oct. 16, 2012      Email from LaChance/Ellison to Jeff Patterson at JCE regarding the Unit, stating: "We need to treat this vacant unit tomorrow please.  This is the unit we had down for a while treating while vacant. . . . Not sure why after 3 treatments it still had BB's but need to get rid of them before new clients move in."  [Document 56-6] at 3.

Oct. 17, 2012      4th treatment – 11 to 25 bedbugs in bedrooms – JCE "inspected and treated interior areas for bedbugs / heavy activity in bedroom."

Oct. 22, 2012      Email from LaChance/Ellison to Brandi Casey ("Casey") in the Hunters Glen leasing office stating that the Unit was still infested with bedbugs and stating that the prospective needed to "find another apartment."

Oct. 22, 2012      Email from Casey to LaChance/Ellison stating that the prospective tenant needed a first floor apartment and that the Unit was the only one apartment available at the time.

Oct. 22 –          No evidence regarding any communication with JCE
Dec. 4, 2012       regarding any possible further treatment, any further inspection, or any knowledge by the Hunters Glen staff members who rented the Unit to Williams that the infestation still was present on December 4, 2012.

Dec. 4, 2012       Email from Hunters Glen to Williams indicating that she would be living in the Unit instead of in the apartment she originally rented.

Dec. 15, 2012      Williams moved into the Unit.

7

Dec. 23, 2012    Williams woke up with bedbug bites.

Dec. 27, 2012    JCE suggested to Casey that Williams brought the bedbugs with her to the Unit.

Dec. 27, 2012    LaChance/Ellison emailed Casey stating "NO [WILLIAMS] DID NOT [BRING THE BEDBUGS]! THE UNIT WAS INFESTED WITH THEM FROM THE PREVIOUS RESIDENTS AND EHRLICH TREATED IT SEVERAL TIMES."

Jan. 3, 2013    Williams vacated the Unit.


### C.  Elements of the Claim

In Maryland, a plaintiff who seeks to recover on a fraudulent concealment claim must prove, by clear and convincing evidence, that:

> (1) the defendant owed a duty to the plaintiff to disclose a material fact;
>
> (2) the defendant failed to disclose that fact;
>
> (3) the defendant intended to defraud or deceive the plaintiff;
>
> (4) the plaintiff took action in justifiable reliance on the concealment; and
>
> (5) the plaintiff suffered damages as a result of the defendant's concealment.

Lloyd, 916 A.2d at 274 (citation omitted).[4]

---

[4] In its motion, Home Properties refers to the elements required to prove the tort of fraud, not fraudulent concealment. See [Document 55-1] at 8. "Fraud encompasses, among other things, theories of fraudulent misrepresentation, fraudulent concealment, and fraudulent inducement." Sass v. Andrew, 832

8

Home Properties is entitled to summary judgment by virtue of the absence of adequate evidence to prove the third of these elements.  Williams has not presented sufficient evidence – if she has presented any at all – to prove that there was any intent to defraud her.[5]  Indeed, she does not even articulate a possible motive for any such deception.

This finding renders it unnecessary to address the first and second elements.  However, since the Court finds additional grounds for summary judgment in regard to these elements, they shall be addressed herein.

---

A.2d 247, 261 (Md. Ct. Spec. App. 2003).  However, the Court of Special Appeals of Maryland has explained that:

> In other words, "fraudulent concealment—without any misrepresentation or duty to disclose—can constitute common-law fraud. . . . Although silence as to a material fact (nondisclosure), without an independent disclosure duty, usually does not give rise to an action for fraud, suppression of the truth with the intent to deceive (concealment) does."  This is so because, as the Supreme Court has explained, a fraudulent concealment is "equivalent to a false representation."

Rhee v. Highland Dev. Corp., 958 A.2d 385, 390 (Md. Ct. Spec. App. 2008) (alteration in original) (citations omitted).

[5]   Just as Williams failed to present even an allegation in the Complaint sufficient to establish the intentional tort of battery.  See Memorandum and Order Re: Remand and Dismissal, [Document 21] at 6, ("Williams has not alleged facts that present any possibility of a successful claim against either Home Properties or [LaChance/Ellison] for battery.").

1.  Duty to Disclose

Judge Williams of this Court explained in My National Tax & Insurance Services, Inc. v. H & R Block Tax Services, Inc., 839 F. Supp. 2d 816 (D. Md. 2012):

> Absent a fiduciary relationship, . . . a plaintiff seeking to establish fraudulent concealment must prove that the defendant took affirmative action to conceal the cause of action and that the plaintiff could not have discovered the cause of action despite the exercise of reasonable diligence. In other words, for a claim of fraudulent concealment to be actionable, plaintiffs generally must allege and prove the existence of a fiduciary relationship.

Id. at 819 (alteration in original) (citations and internal quotation marks omitted).

The Court of Appeals of Maryland has held that "absent special circumstances to the contrary, the landlord-tenant relationship is a contractual relationship," and not a fiduciary one. MacBride v. Pishvaian, 937 A.2d 233, 240 (Md. 2007) abrogated on other grounds by Litz v. Maryland Dep't of Env't, 76 A.3d 1076 (Md. 2013).

Williams has not presented evidence adequate to prove that Williams and Hunters Glen had anything other than an arm's-length contractual relationship. Williams has presented no evidence of special circumstances to indicate that her relationship with Home Properties was anything but a traditional landlord-tenant relationship.

### 2. Failure to Disclose

Williams has not presented evidence adequate to prove, by the requisite clear and convincing standard, that the Hunters Glen staff member(s) who, on December 4, 2012, informed Williams that she could rent the Unit,[6] knew that, at the time of the rental the Unit was bedbug infested.  Of course, the evidence could establish that the Hunters Glen staff member(s) knew of the infestation as of October 22.  Hence, perhaps there could have been negligence for a failure to determine the status prior to Williams' rental of the Unit.  However, Williams' Count III claim is not based on negligence, but on fraudulent concealment.

There is no evidence adequate to prove that any Hunters Glen employee took affirmative action to conceal the current existence of bedbug infestation since there is no evidence proving that any such employee actually knew of the then-existing condition.  Of course, a jury could find that there was an implicit negligent representation that the Unit was not infested, by virtue of its rental to Williams, or that there was a breach of contract by virtue of the rental.  However, again, Williams' Count III claim is not based on a negligent misrepresentation or breach of contract, but on fraudulent concealment.

---

[6]  Instead of the apartment she originally intended to rent.

11

IV.  PUNITIVE DAMAGES

The Court is hereby granting summary judgment to Home Properties on Court III (fraudulent concealment).  Thus, Williams' entitlement to any punitive damages must be based on the claims in Count I (negligence) and Count II (Maryland Consumer Protection Act).  Punitive damages cannot be recovered on these claims.

"Punitive damages are not available in a private cause of action under the Consumer Protection Act." Frazier v. Castleford, Ltd., 59 A.3d 1016, 1026 n.20 (Md. 2013)).

"In a non-intentional tort action, the trier of facts may not award punitive damages unless the plaintiff has established that the defendant's conduct was characterized by evil motive, intent to injure, ill will, or fraud, i.e., 'actual malice.'" Owens-Illinois, Inc. v. Zenobia, 601 A.2d 633, 652 (Md. 1992). A defendant acts with actual malice when he "makes a misrepresentation with intent to deceive and 'actual knowledge' of the falsity of the representation." Frazier, 59 A.3d at 1026.  The Court has granted summary judgment with regard to the only claim based upon a misrepresentation – for fraudulent concealment.  As to the negligence claim, Williams has presented no evidence from which a reasonable jury could find that any

tortious conduct was "characterized by evil motive, intent to injure, [or] ill will."

Accordingly, Home Properties is entitled to summary judgment on Williams' claims for punitive damages.

V.  CONCLUSION

For the foregoing reasons:

1. Defendant's Motion for Partial Summary Judgment [Document 55] is GRANTED.

   a. All claims in Count III are dismissed.

   b. All claims in Counts I and II against Defendant Home Properties shall proceed to trial.

2. Defendant J.C. Ehrlich's Motion to Dismiss the Third Party Complaint and/or to Compel Arbitration of Third Party Plaintiff's Claims, [Document 43], remains pending.

3. Plaintiff shall arrange a telephone conference, to be held prior to July 3, 2015 to set the date for trial of the claims in Counts I and II.

SO ORDERED, on Tuesday, June 23, 2015.

/s/
Marvin J. Garbis
United States District Judge